All right, Mr. Cole. Thank you, Judge Smith, and may it please the Court. Six months ago, this Court joined at least two of its sister circuits, now three, in holding that because the legislative privilege protects the lawmaking process itself, state legislators do not waive that privilege by communicating with their parties outside of the legislature, such as party leaders or lobbyists. You're talking about what we're calling the Hughes case? Yes, sir. The Hughes or Abbott. I think I'll call it Abbott, but I'm happy to refer to it as Hughes to keep it consistent. Plaintiffs' arguments in this case, however, represent an effort to collaterally attack that considered judgment of this panel's colleagues. But the Court needn't get to the merits or the demerits of plaintiffs' legislative privilege arguments because of a more fundamental jurisdictional hurdle, and that is mootness. And because resolving this appeal on mootness grounds would obviate any need for the Court to address the appellate jurisdiction or appellate standing arguments that my friends on the other side raise, I'd like to begin with mootness and then return to those two issues as well as the merits thereafter. So our pitch to this Court is that the simplest way and most straightforward way to resolve this appeal is to hold that because Mr. Vera's untimely death moots any request to redepose him or obtain any documents from him to facilitate that redeposition, that the appropriate disposition then is to vacate the order below and remand to adjudicate my friends on the other side's claim that they're entitled to these documents for some other reason. The Court will recall that the order at issue compels, and this is at 12.779 of the record, the order compels Mr. Vera to sit for a redeposition. It suggests that the plaintiff should serve a Rule 45 subpoena on him to get his documents, and this is all geared towards a second redeposition. Obviously, Mr. Vera, unfortunately, has passed away, and he can't sit for that deposition. That part might be moot, but I thought the subpoena also sought documents from the Harris County Republican Party, and it was a little broader than just, well, Mr. Vera, whatever you've got in your personal possession. So as I read it, Judge Wilson, and I'm looking at sort of the last paragraph before Section C on page 12.779, it appears that the Harris County Republican Party issue is also geared towards the second deposition. It has a time frame. It says, please produce these documents 14 days prior to the second deposition. And I think that's notable because there is this sort of possession, custody, and control issue that's lurking that the district court didn't resolve in the first order. He said, well, I know there's this issue about whether Harris County has these documents, whether they have actual legal possession, custody, and control of it. The district court didn't need to resolve it at that point because the district court's order, I thought, just basically roped in Mr. Vera and the Republican Party, so the documents were going to be produced by one or the other. That's right, but now Mr. Vera is deceased, and I suppose that they could try and serve a subpoena on his estate or something like that. Well, or the Harris County Republican Party. Well, but now the issue, I think, is coming to sharper relief with his death because Harris County says, we don't have the documents. They're in Mr. Vera's possession, custody, and control. And maybe there's some way that the court can craft an order, the district court can craft an order to get those documents. Our pitch is that it's probably appropriate for the district court to try that in the first instance here. But I don't want to resist it too much because if the court does think that this case isn't moot, then our view is that, and if the court thinks that that piece of the order or some other piece survives Mr. Vera's death, then we do think the court has jurisdiction and should reverse. What about the district court's ruling last week? Was there a permanent injunction entered regarding the law and the underlying merits of the case? Does that moot this appeal? I understand. Well, I don't think so. I understand that there's a trial that's been held open and that was on a summary judgment order, and I think it was with respect to two particular provisions of SB 1. I understand that there's some form of a trial that's supposed to continue to go forward, like a second piece of it, so I'm not sure that that does resolve this issue. I think plaintiff's position, and I'm sure they'll tell you that if I'm wrong, I think their argument is they want some of these documents for that second piece of the trial. Now, if the court does think that some part of this order survives Mr. Vera's death . . . Before you get to that, since you've mentioned the county Republican Party, so apparently there were new notices of appeal that were filed last week in this case, is that right? Recently? One of which was from the county Republican Party. I'm just wondering whether that has any effect at all on what we're dealing with here. I'm not aware of what the Republican Party might have done. I don't know that it relates to this. It may well relate to the . . . it may well relate to that permanent injunction that Judge Wilson was talking about. I'm not sure that it affects this discreet appeal, however, about these documents. Because there were two new notices of appeal that were filed in this case under this cause number, so I'm just trying to figure out. If you say you don't know or it doesn't matter, that's fine. I just was curious. Yeah, I'm just not sure, Judge Smith, about those. I don't think it relates to this. I didn't see any on the ECF notification in this appeal. I know this Consolidated case has already produced a number of interlocutory appeals, so I wouldn't be surprised to hear that several others have materialized in the interim. I'll turn to the jurisdictional and merits pieces now, besides mootness. My friends raised two threshold arguments, appellate jurisdiction, appellate standing. I'll start with appellate jurisdiction, and I think that one is certainly the easiest one because I think this Court's appellate jurisdiction is secure, and that follows directly from the Abbott or Hughes decision just six months ago. That panel said that the class of claims, and it defined that class of claims at page 234 as governmental, non-parties, asserting legislative privilege. And it said that that class of claims falls within the collateral order doctrine. And that's exactly what you have here. That is the exact class of claims here. And I don't think there's any daylight between that opinion, especially on that issue, and this appeal right here, this order right here. In Hughes, the legislators themselves were asserting the privilege, right? And did they intervene there? The, well, the Rule 45 subpoenas in Hughes were served directly on. They were resisting, they were resisting third-party discovery, that's right. That's right, yes. So here, did they try to intervene? Did they, did they try to inject and assert the privilege in any way in this case? I think they did. They didn't intervene, and this Court's cases suggest they don't have to intervene. That's the SEC versus 4X asset management case. But I think there's at least a couple ways in which, which this was, and I think this is going to the question sort of more on the merits, Judge Wilson, on whether it was properly invoked. And so as, if I understand that to be where you're going with that question. Well, I'm just trying to figure out how these two non-parties are the appellants in this appeal when they didn't participate below. I mean, I guess their participation was sort of lurking or indirect or something, but it is different than Hughes in that regard. I think not in any really material sense, and I'll go to, I would reject the, I would disagree with you on the idea that they didn't participate below. And I think my friends on the other side take a sort of narrow view of how to define this, the first prong of that Castillo test, participation in proceedings. We would take, and we think this court's cases take a broader view of how to define the proceedings. And well, I'm anxious for you to get to what the participation was because I couldn't find any. Yes, sir. Tell me what they did below. How they participated. Well, when you take a look at the proceedings, this of course, this case of course arises from the whole consolidated SB1 trial, which also produced the Hughes decision. And there, of course, the legislators had asserted their privilege up and down, left and right, north and south, east and west. They defended those privileges. You're going to get to telling me how they participated below in this case? Well, I think this is the same exact case and that's one level, but I have another reason. This case is that case. Same consolidated case, same consolidated case. This is all. But when they were participating in Hughes, they were participating in this case at the same time. Was this case going on at the same time? It was going on roughly at the same time. We had already taken the interlocutory appeal and it was pending before this court in Hughes while this whole situation materialized. And maybe it would be helpful for me to sort of lay out sort of procedurally what happened here. But the resolution in Hughes doesn't resolve this. Well, I think it does resolve this on the merits, certainly. This is the, these two appellants. Well, then why did you file an appeal in this one? Because this. If you had to answer in Hughes. Because we didn't have it yet. This appeal, we noticed this appeal while the Hughes appeal was pending in this court. And while this case was, while Hughes was pending in this court, it was resolved. And we asked my friends on the other side if they would agree to just, we can dismiss the appeal and vacate the order. And they thought this issue, this order below survived Hughes in some way. We don't think it does. We think Hughes resolves this. And the distinction they raise is that, well, instead of serving these subpoenas or seeking this discovery from the holders of the privilege, and these two legislators are holders of the privilege, they said, well, we'll just serve it on people the holders of the privilege communicated with. And with respect, that's not how any other privilege that I'm aware of works. I mean, you wouldn't say, we can, I understand I can't subpoena a client for privileged documents, but I'll subpoena the expert witness, or I'll subpoena the translator, or I'll subpoena the attorney. And then my friends on the other side would say, well, the attorney is in an agent type relationship with the client, and so we don't have that here. But I would say we do have that here, particularly with Mr. Vera, because this court already told us in Hughes that he was brought into the legislative process. That's at page 237 of Hughes. And so he's, in effect, an agent of these legislators with respect to the issues of SB 1. So he was acting in the capacity as a legislator, though he was not a legislator, for purposes of the privilege. Yeah, he was brought into the process, the legislative process. And I think you don't even have to rest, I mean, I think Hughes takes care of that from a rule of orderliness perspective. But if you look at page 2659 and 2655 of the record, that's Mr. Vera's deposition testimony. He talks about what he was doing. So he talks about, yeah, I was commenting on bill language. I was giving feedback on these bills. This is stuff that's squarely within the heartland of the scope of the legislative privilege. So if the court even gets to whether it applies here, that is heartland stuff that this court already decided in Hughes. Well, yeah, I would caution not to go too far on that, though, because one question that's been kind of bouncing around my mind is where's the line? I mean, he wasn't a staffer. And I think to some degree you can maybe say he was an agent of these legislators, but that seems dangerous to me also, because legislators are constantly talking to constituents. They're constantly talking to voters who are concerned about this or that, whether they're constituents or not. And then you do have subject matter experts that come to the Capitol and testify and that sort of thing. So where do you draw that line? Yeah, I think there may be cases in which you may have to draw the line. I mean, if some random constituent comes up and writes you a letter and says, I don't like this, is that going to be within the privilege? It may well not be, and future cases would have to. What if you meet with the constituent? What if you meet with him? What if you meet with the constituent? It's possible that might. It depends on— What if they give you feedback on a bill as a constituent? Is that enough? It's possible, but I don't think the court has to address in this case those sort of edge or marginal cases, because here we know, at least with respect to Mr. Vera, and again, this is about communications with Mr. Vera, this court already said he was brought into the legislative process, and what was going on in this case is commenting on bill language, proposing bill edits from his deposition testimony. This focuses on the language from Hughes, as I understand it, that says the privilege involves, quote, all aspects of the legislative process. That's right. Is that the broad language that you rely on? That's part of it. I would say at 237, and I'll pull it up for you here, the court says that third parties were brought into the legislative process, so this is at page 237, it says the privilege log shows that the legislators did not send privileged documents to third parties outside the legislative process, semicolon, instead they brought third parties into the legislative process. This is, again, talking about Mr. Vera, because at issue in Hughes is some subset of the same documents that are at issue here. They're just saying, we won't ask the legislators, we'll ask the person the legislators communicated with. Again, I'm unaware of any ... Oh, what's your evidence now that Vera was an agent? You said he was an agent of the legislators, is that what you're saying? Yeah, he was, in effect, an agent, because I'm responding to something my friends on the other side have said to sort of distinguish the attorneys. What's the evidence that he was an agent? The evidence ... They had an agreement, they asked him to be their agent. The evidence is twofold, Judge Graves. Number one, this court already essentially said that when they said he was brought into the legislative process in Hughes, but also, if you look at his deposition testimony, I'd point to 12.655 through 12.659 of the record, that's his deposition testimony. When Hughes had subpoenas served on the legislator, and then Vera got brought into Hughes, so he was viewed as being subject to the subpoenas served on the legislator. No, I ... Was that determination made in Hughes? No, so he was ... This happened, I believe, after the Hughes case was up on appeal or debriefed and pending before this court. He was served an individual deposition notice, so he was deposed in a separate Rule 30 notice. But you're telling me that's evidence that he was an agent of the legislators? I'm telling you that Vera's communications were at issue in the Hughes case, and so the court was talking about some of the same exact communications that are at issue here. And furthermore, what I'm telling you is that ... Oh, it's that that makes him an agent of the legislators, because the court was talking about the same thing. It's both ... Not quite. It's both ... And I see my time has expired. No, go ahead. It's both the rule of orderliness aspect of this, that is to say, this court already said, Mr. Vera was brought into the legislative process, and number two, his deposition ... Didn't say he was an agent of the legislators. That's how ... They didn't use the phrase agent, but they said he was brought into the legislative process. And the second piece of it, Judge Graves, that I'd point to is what he said in his deposition testimony, which is that he said he was engaged in stuff that we would consider to be heartland legislative acts. And he was essentially corresponding with these legislators about bill language and edits on bills. So this is not sort of edge case stuff that I was talking about with Judge Wilson. This is heartland stuff. And to sort of sum it up briefly, it's the rule of orderliness ... Is heartland a term of art, or ... I think it's used ... It's in the square center of what we would consider legislative acts. I think there's ... Well, when legislators are doing it, when legislator staffers are doing it, but the question we're grappling with is when third parties are doing it, outside parties are doing it. When is it heartland? When it's legislative conduct. I mean, the court says whenever the legislator is acting in the legitimate sphere of legislative activity ... Somebody, a constituent, gives me a proposed bill because I represent them in the House of Representatives. So then our conversations about that are privileged? It's going to depend on the facts of the case. I don't dispute that there could be sort of harder cases that the court would have to leave to another day. But I'm saying in this case, it's clear with Vera. What he's doing is clear. He was brought into the process. You might be able to say in another case, well, this constituent wasn't brought into the process. They walked in off the street and dropped off a piece of paper. I'm going back to the time I was in the Mississippi House. Sure. And I've lived this life, and drawing the line is pretty important. That's right, and I don't think, though, that this case provides the opportunity or the requirement for this court to draw that line because what Vera did, again, this court already said, he was into this process. He was brought into the process, so he wasn't in the same position, Judge Wilson, as some random person that walks off the street and starts saying the bill language or something like that. It may be a more difficult question, but I think the court has already resolved in Abbott the question of whether or not Mr. Vera would occupy a similar relationship to the judge. So if you're an insider, you're more likely to be cloaked with the legislative privilege, but if you're just some random constituent that has the audacity to go to their legislator and ask for something, then forget it. Well, there's at least four circuits, including this one, that have said— I'm being a little flippant, but, I mean, you have to kind of acknowledge the fact that if you're connected, that means you're much more likely to be drawn in than if you're not. It's not just me that would acknowledge it. It was this court, the Second Circuit, the Fourth Circuit, and now the Eighth Circuit have said, party leaders and lobbyists. That's Bruce, that's Almonte v. City of Long Beach, that's Abbott. That's, you know, already kind of established, I think, by this court's case law. I see I'm well over time, so— Yes, you've saved some time for rebuttal, Mr. Cole. Thank you. Mr. Curtis. And, Pam, let's give Mr. Curtis two extra minutes, because Mr. Cole went over a little bit because of questioning. All right, Mr. Curtis. Thank you, Your Honor. Good morning, and may it please the Court. Judge Rodriguez ordered the Harris County Republican Party to search for and produce documents on Mr. Rivera's personal computer and personal email account. The legislators cannot appeal that decision because they did not object or participate in any way in the district court proceedings underlying this appeal. And to be clear, the legislators had numerous opportunities to do so. They could have objected to the document requests when we first served them in July of 2022. They could have opposed our first motion to compel, which we filed in November of 2022. They could have objected at the hearing on the first motion to compel, which occurred in November 2022 as well. The only way they get to do all this is by intervening, right? No, Your Honor. How does a non-party come in and engage in the discovery process in otherwise unrelated litigation? Well, if they believe that they had an interest and they had participated in other aspects of the consolidated cases before, they could have instructed their attorneys to enter an appearance at that hearing in November and could have asked to be heard by Judge Rodriguez on whether or not the documents should be produced. But they didn't do that at all. And just to keep going, you know, they could have appeared at Mr. Rivera's deposition in February of 2023. They could have opposed our second motion to compel, which we filed in March of 2023. And then again, they could have appeared at that second motion to compel hearing in March of 2023 when Judge Rodriguez ordered these documents to be produced. And even then, after Judge Rodriguez had ordered them to produce the documents, and when I say them, I mean the party, to produce these documents for the second time, they could have filed a motion for reconsideration in the district court. But they didn't do any of those things. They came to this court first and asked you to weigh in on their legislative privilege arguments. They're essentially asking you to exercise original jurisdiction over a dispute that they never litigated in the district court. But that's not how appeals work because they did not take any action below and didn't participate at all. They lack standing to bring this appeal and you lack jurisdiction to hear it. Just to point you to a few places in the record that I think really highlight these points. At 13187, page 13187 of the Record on Appeal, Mr. Hilton, who is the attorney from the Attorney Office of the Attorney General, he entered an appearance on behalf of the state defendants. And later in that hearing, Judge Rodriguez very specifically asked him, this is at ROA 13191. So the answer is, neither the legislator nor any attorney representing a legislator invoked the legislative privilege. Is that correct? And then Mr. Hilton said, yes. He gave a little bit of, he mentioned that they also represented these legislators in other contexts in the consolidated cases, but he said, yes, Mr. Wassdorf was there as the attorney for the state defendants. Well, you say other contexts. You're talking about the exact same issue in Hughes where the legislators themselves did in fact invoke the privilege. That appeal came up and our court issued its decision. I mean, it's not a completely unrelated, attenuated context. These are the same lawyers we're talking about, correct? These are the same lawyers. Same legislators, correct? Same legislators. And same issue, just the opposite side. I'm sorry. I'm sorry, Judge Wilson. I didn't mean to interrupt. That's okay. I was going to say, there are some other legislators who are participating in Hughes who haven't appeared in this appeal at all, and so they're . . . But these two were involved. Yes, these two were involved. And so this is just the other side of the coin, so to speak. This is a third party instead of the legislators who had communicated with the third party. Well, I would take issue with the characterization of it being the same issue, Judge Wilson. We think it's a very different issue because it's a document request that was served on a party to the case which is not a legislator and has no right to invoke this privilege. And so therefore, it's a very different issue . . . Well, you're trying to do indirectly what you can't do directly. Well, we are trying to seek documents that are relevant to our case, but we're seeking them from a party that we believe we have the right to seek them from because these are not legislators. These are not parties that can hold the legislative privilege or invoke the legislative privilege. And the reason for that is because the legislative privilege is a testimonial privilege that's meant to protect legislators from being subjected to legal process. Well, you've got to deal with Hughes and the other case law that counsel opposite cited from the other circuits. The legislative privilege is broader than that. Well, in Hughes, this court actually said the importance of the legislative privilege, and I quote, derives from the purpose of the legislative privilege, which is not to protect against disclosure in general. Again, I'll repeat that. Not to protect against disclosure in general, but to foster the public good by protecting lawmakers from deterrence to the uninhibited discharge of their legislative duty. And then the court went on to say, this is at 233 of Hughes, requiring legislators to participate in document discovery, to participate in depositions, to participate in the process that they are supposed to be protected from under the legislative privilege. But Hughes also said that the privilege covers material provided by or to third parties involved in the legislative process, and then later the court said all aspects of the legislative process. So it's not just testimonial limited to testimony of a legislator. So whom else does it cover? It covers legislators and their aides. As the Supreme Court said in Gravel, the privilege can be invoked by the senator or the senator's people who have the right to invoke the privilege and who have the right to be protected from it. And those parties, Judge Smith, cannot be required to turn over documents. In most cases, in the vast majority of cases, they can't be required to sit for depositions because the legislative privilege is supposed to protect them from being subjected to process that's going to interfere with their ability to do the job that voters sent them to do. So instead, it's okay for parties to go after the third parties to whom the legislators or their aides talk, ask for input, work with. It's okay to do that. The legislative privilege could be evaded easily just by going through the back door. I wouldn't say evaded, Judge Wilson, but... That's exactly what happens. It's of no moment if legislators can't speak to subject matter experts, work with their constituents, basically being compelled to then spill the beans on what they met about and the bill they worked on and et cetera. I mean, the privilege is diminished well beyond what the law allows it to be diminished. I take issue with that, Judge Wilson. I disagree. You know, the court was very clear, again, they said not to protect against disclosure in general. It's not to protect the confidentiality of those communications. It's to protect the legislative process. And the point is, though, the legislative process is a lot broader than what you do in the Capitol building. That's correct, but this is also not a legislator lobbyist privilege, Judge Wilson. No, exactly, but this guy was actually going to committees and testifying before committees. I mean, you could make the argument he was a subject matter expert. That's exactly the kind of person that a legislator ought to go to for input, knowledgeable input on crafting legislation. How's that not the privilege? Well, that is the privilege in the dock, in the hands of the legislator, and the legislator is not required. How do you not, you just totally destroy the legislative privilege then if it's outside the hands of the legislator. Subject matter expert, I'm subpoenaing you. You just tell me everything y'all talked about. That destroys the privilege. I don't think it destroys the privilege because the privilege is meant to protect the legislator from being subjected to various legal processes. But then it's the exact same thing. As Hugh says, the privilege serves the public good by allowing lawmakers to focus on their jobs rather than on motions to practice in lawsuits. Exactly. So what's the legislature supposed to do? What are legislators supposed to do? How do they monitor every litigation that may be ongoing that may invoke the privilege? They don't need to monitor them, Judge Wilson, because the legislative privilege doesn't apply to documents that are held by those independent third party lobbyists who they have chosen to communicate with. When they choose to communicate with those outsiders, those parties that they have no fiduciary relationship with, they have opened up the possibility that those communications may be subject to disclosure in some sort of litigation. And to be clear, we're not asking you to disagree with Hugh's in any way. We're asking you not to extend Hugh's in a way that is completely unprecedented. I'm not aware of a single privilege, let alone the legislative privilege, that allows one party to go to another independent third party with whom they have no fiduciary relationship and claw back documents that they have already disclosed to that independent third party. So in your view then, under Hugh's, does the privilege extend at all beyond the legislators and their aides and their employees? I don't believe so, Judge Smith. I mean, it's possible that perhaps the clerk of the House of Representatives or some other staff member who worked for the legislative body would be covered by the privilege, but it's not meant to protect lobbyists from being required to testify in court or being required to sit for a deposition. So it can never be a third party of any kind, is what you're telling us. I don't see how that is consistent with the broad language in Hugh's. In other words, it would have been so easy for the court in that case to have said that it's limited to staff, however they might want to define that, but that's not what was said. Instead, it said all within the regular course of the legislative process and all aspects of the legislative process. Well, it did say that about documents that were subpoenaed from the legislators themselves. It said that the legislators didn't waive the privilege by disclosing documents to outside third parties. So when the plaintiffs in the Hugh's case, which were different plaintiffs, by the way, when those plaintiffs sought those documents from the legislators themselves, this court held that that was not a permissible legal process that could be carried out because the privilege was meant to protect legislators from the distractions and time and expense of engaging in litigation. But these are very different, this is a very different circumstance where the documents are in the hands of this independent third party. We're not bothering or burdening the legislators at all. They didn't have to participate in the district court proceedings at all, and they didn't. And that's exactly why the legislative privilege doesn't apply here, because there were no burdens whatsoever on the legislators. And the legislative privilege is not supposed to protect the secrecy of what legislators are saying to lobbyists or other parties that are communicating with them about the legislative duties that they're performing. The legislative process is supposed to be open and transparent so that people know who they're voting for and what they're voting for when they elect their representatives. It's not meant to be a secretive process that's done behind closed doors. And Judge Wilson, as you mentioned earlier, their position has no limiting principle whatsoever. It could be my grandmother who's communicating with a legislator, and they would be able to, under their framework, say, you can't seek documents from my grandmother because those communications are covered by the legislative privilege, because any time the legislator is engaging with any constituent, any lobbyist, any party member, that communication is covered by the legislative privilege when you seek it from that third party. So you're, if I hear you right, you're saying that under these facts, there was not any particular special relationship with Mr. Vera that distinguishes him from any other citizen or constituent? That's correct, Judge Smith. He was lobbying the legislature to promote additions to the law that he thought would be beneficial for the interests that he was trying to promote. Was he an actual lobbyist? What's that? Was he an actual lobbyist? You called him a lobbyist. I don't know if he was a registered lobbyist, but he was lobbying the . . . Lobbying the legislature doesn't mean you're a lobbyist. It could be you're petitioning, I mean, however you want to describe it, but in Mississippi, at least, lobbyists have to register, they have to disclose their certain definitions. We also have subject matter experts who do not have to register as lobbyists, and they regularly contribute to the legislative process, and it seems like, to me, that's what Mr. Vera was here. I'm not sure exactly what his status was, but I know that he was a volunteer with the Harris County Republican Party, and that he was advocating for changes to the law on their behalf. But the legislature brought him in to testify before committees, did it not? They did, but the legislature can bring in whoever they want to testify. Well, which goes right back to the idea that maybe what they're doing is under the legislative privilege because the legislators are actually legislating. Well, they . . . But would testimony before a committee be private? No, it wouldn't, Judge Graves. So if someone got called in by the legislature to testify before a committee, I guess I'm trying to follow what would be secretive about that that would need to be subject to a privilege. There's nothing that would be secretive about that, Judge Graves, and that's exactly why, and it actually illustrates my point. And I think if we look at . . . But what about preparing an expert witness? Preparing an expert witness? The preparations for the witness to come testify. Those would be privileged to the extent someone was seeking information from the legislators themselves, but it would not be privileged if the information was sought from a witness that was put up on behalf of the, or not on behalf of, but who was put up to speak one way or another on legislation. But I want to go back to your question, Judge Graves, because in Gravel, we have a very interesting situation. So we have a situation where Senator Gravel goes into an open committee meeting, and he reads from the Pentagon Papers, and he later publishes the entirety of the Pentagon Papers into the public record. And he then sends them to an outside newspaper that publishes them, and the government tries to subpoena information from his legislative aides about that information that he disclosed publicly, openly, in a legislative hearing. And the Supreme Court said that information is covered by the legislative privilege because the legislative privilege is meant to protect Mr. Gravel and his aides from being subjected to a legislative process, or legal process, that's going to interfere with his ability to perform his day-to-day duties and carry out his role as a legislator. And so that goes to show that it's not about whether the information is public or private. It's about protecting the legislator themselves from being subjected to a legal process and being required to participate in a court process. It's not about the confidentiality of the documents. But setting all of this aside, this is a very complicated issue with unprecedented arguments that are being made on the other side. And you don't need to reach any of them because there's no jurisdiction to hear this case in the first place. And I also want to respond to a thing, or a point that my friend on the other side made about mootness, which is he said there are custody and control questions here. That is absolutely incorrect. If you look at the order from Judge Rodriguez, it is almost entirely about possession and control. And on April 10th, 2023, the Harris County Republican Party sent us a letter in which they said, we have collected these documents from Mr. Vera pursuant to the court's order. We have them. There are a subset of them that the Office of the Attorney General tells us they think are covered by the legislative privilege, and so we are not sending those particular documents to you today. Because three days earlier, this court had granted an administrative stay on Judge Rodriguez's order requiring the Harris County Republican Party to turn over those documents. So they said, we're willing to send you these documents. We have them. They are no longer just on Mr. Vera's personal computer or personal email. We're prepared to send them, but we will hold off while we wait for the Fifth Circuit to weigh in on this case. So the idea that we were just seeking these documents in connection with the deposition or that there's questions as to whether or not they're in the possession and control of the Harris County Republican Party, those are not before you and also just completely irrelevant because the documents are available, they can be sent, and also the district court very clearly ordered the party itself to produce these documents, not just Mr. Vera. And to also drive that point home, Judge Rodriguez ordered them to produce these documents in December of 2022, long before we even took Mr. Vera's deposition. So the documents, there has been a standing order from Judge Rodriguez that the party needed to produce all responsive documents to this document request dating back that far. So the idea that this case is moot is just not accurate factually. I see my time is almost up, so I'd like to just reiterate, you know, we strongly believe that the most simple and straightforward way to dispense with this appeal is to acknowledge that the legislators did not participate in the lower court proceedings, they didn't take any action to protect their rights there, and they shouldn't be allowed to come to this court in the first instance and assert the legislative privilege for the very first time. They need to participate in that process, they need to demonstrate that they have some interest, but they don't actually have an interest here. Let me ask you about a comment that Mr. Cole made, and I'm rewording because I didn't write it down, that this is all part of one, these are my words, one big case that was the same case that was involved in Hughes, such that to some extent, Hughes already decides some of the issues here. Anyway, again, that's my clumsy wording, but you heard what Mr. Cole said about that, and why don't you respond? Yes, Judge Smith. So, as a factual matter, this is one case that is part of a larger, consolidated group of cases that are being tried and handled concurrently and in tandem with one another. But as I said before, this is a separate issue involving different plaintiffs, involving different parties. There were not the same parties involved in that appeal, there were different plaintiffs. Same legislators, right? The same legislators, but the legislators there were the subject of the subpoena. They were the people who had been subpoenaed for these documents that were being sought. Here we have a document request that was served on a party that intervened in the case, and there the issue is very different than the one that was at issue in Hughes. I see my time is up, and so we would just urge you to dismiss this appeal for lack of a better term, the district court's decision. I thought I was listening carefully. You said about a party that intervened in the case. Correct. The Harris County Republican Party was not a defendant in this case. They intervened in the case. All right. You're not talking about the legislators who filed this appeal? Sorry? You're not talking about the legislators who filed this appeal? No. All right. The legislators were . . . I understand. Yeah. We sent a third party subpoena to the legislators, but the party itself intervened in the case, and then we sent them document requests asking for their communications with the legislators. Thank you, Your Honors. Thank you, Mr. Curtis. Mr. Cole, you've saved some time for rebuttal. Just a few points in rebuttal, if I might, Your Honors. I want to first address the argument that you heard at the top of the bottom side argument that there's so many things these legislators could have done to get involved in the proceedings below. They said they could have objected to the documents. They could have appeared at the deposition. They could have intervened in the case. Well, first of all, none of this Court's cases require to get appellate standing us to do that, and there's a good reason, of course, because there's no reason to think we would have been served with the discovery requests that were served on Harris County. Also, Harris County, for a long time, was maintaining the position that these documents, which were on Mr. Vera's personal computer, were not in their possession, custody, and control, so until this deposition happened, there appears to have been no risk that there would have been legislatively privileged documents that would be turned over by Harris County. At the deposition, which, again, the legislators wouldn't have a right to attend, they're nonparties to the case. They weren't being deposed. The state defendants and counsel for the Office of the Attorney General was there, and since they represent both the legislators and the state defendants that are currently parties to the case, they raised the objection, but somebody else raised the objection at the deposition, and that was Vera himself. Vera's counsel noted that they didn't want to reveal privileged documents. Vera refused to testify to that matter, so Vera himself raised it, and I would say the first opportunity probably would have been the motion to compel hearing, but I think a timeline might be helpful for teasing out what happened here. The deposition of Mr. Vera happened on February 27th of this year. The next Saturday, March 4th, the motion to compel was filed. The next business day, March 6th, that's a Monday, the motion to compel hearing was set for the next day, Tuesday. So on Tuesday, the state defendants both appeared at the hearing, and they filed a motion objecting to the disclosure of privileged documents, and 12-698 of the record is part of that motion, and they say the legislators, these legislators here, have requested that counsel use its best legal judgment to vigorously defend the privileges to which they are entitled. So counsel for the legislators who, again, represented the legislators in the prior appeal, which came from this current consolidated case, raised that objection on behalf of the legislators. Now, they say we had to intervene. We didn't have to intervene, SEC versus Asset Forex Management shows that's the case, so I think we raised it the best we could, given the time constraints, at the earliest available possibility. Plus, I'd add, there can be no question that these legislators were vigorously defending their privilege. Nobody had any, nobody was caught by surprise by this. These legislators litigated that case, both in the district court, last year. Well, what's telling to me is you said they were defending their privilege, but this case is against somebody who's not the legislators, they've been ordered to turn over documents that are not, it's not the legislators who are the subject of the order below. But it's the legislators' privilege, they're the holders of the privilege, and I think this kind of goes to- And they're asserting their privilege on behalf of someone else. No, they're asserting their privilege on behalf of their documents and their communications. This court in Abbott said that the communications are privileged. This concerns, Judge Graves, a subset of the same exact documents at issue in Abbott. I mean, I'm unaware, and this sort of goes to where I wanted to go with it, I'm unaware of any other privilege, and I've not heard of one today or in the briefing, in the Anglo-American legal tradition, that can be so easily circumvented by saying, well, I know I can't ask the holder of the privilege, the legislators, but I'll just ask the one, the persons that the legislators communicated with. No court in the United States would say, well, yeah, we'll let you ask the attorney, I know you can't ask the client for his privilege documents, or I'll let you ask the RN, not the doctor, or not the patient for the privilege. No court in the United States would say that, but that's effectively what they're saying here. And I think there's a reason you won't find any case adopting that position, and it's because such a privilege would not be a privilege at all, as this court essentially already noted with respect to plaintiff's waiver argument in Abbott. It wouldn't be a privilege at all, it would be a paper tiger. It would be able to be something. But you haven't found one that says they get to assert their privilege on behalf of someone else. They get to assert a legislative privilege on behalf of someone who's not a member of the legislature, who's not a staffer of the legislature. You haven't found that case. It's their privilege, and we found that, those cases in the context of the attorney-client privilege case. Happily, this doesn't happen that often. And this is, you know, this is, the legislative privilege is an old privilege, but no, there's not often cases where parties are trying to circumvent the privilege that way. But it does happen in other common law privileges, like the attorney-client privilege, and we would say the court should look to that. Again, if that's what the legislative privilege means, you just ask the person that the holder of the privilege communicated with, it's not a privilege. And if any court ever, no court would ever bless that in any other context of any other common law privilege. And so for that reason, we think the court shouldn't go that far here. I see my time has expired. All right. Thank you, Mr. Koh. Your case is under submission.